| From: | Hans Christian Beyer [hbeyer@wans.net] |
|-------|----------------------------------------|
| Sent: | Friday, May 13, 2005 4:23 PM |
| To: | Frank Amadeo |
| Cc: | Rachel Brown |
| Subject: | KVN Plan (as filed) as requested |

Attachments: 05-04-14.KVN.Debtor's Plan of Reorganization.pdf

++++++++++++++++++++++++++++++++++++++++++++
Hans Christian Beyer
Saxon Gilmore, *et al.*, P.A.
201 E. Kennedy Blvd., Suite 600
Tampa, FL   33602
Telephone:  (813) 314-4509
Facsimile:  (813) 314-4555

The information contained in this e-mail message and any
attachments is confidential and may be privileged. If you
are not the intended recipient of this e-mail message, please
use all copies of this message and any attachments, destroy
by hard copies of this message and any attachments, and
advise the sender of your receipt of this message by return
e-mail. Thank you.

EXHIBIT "C"

16/2008

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN RE:                  :   Chapter 11
                        :
                        :
KINGDOM VISION NETWORK, INC.,   :   Case No. 04-25382-BKC-RBR
                        :
                        :
Debtor.                 :
_____ :

## PLAN OF REORGANIZATION
### SUBMITTED BY KINGDOM VISION NETWORK, INC., DEBTOR-IN-POSSESSION

Submitted on April 14, 2005

Counsel for Debtor:
SAXON, GILMORE, CARRAWAY,
GIBBONS, LASH & WILCOX, P.A.
Hans Christian Beyer
201 E. Kennedy Boulevard, Suite 600
Tampa, Florida 33629

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DEBTOR'S DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST AND IMPAIRED EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THIS PLAN. THE PLAN PROPONENTS RESERVE THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTOR'S HISTORY, BUSINESS, AND RESULTS OF OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE REORGANIZATION CASE AND THE MEANS OF FUNDING THIS PLAN. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

THIS PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OF THE DEBTOR SHOULD EVALUATE THIS PLAN IN LIGHT OF THE PURPOSES FOR WHICH IT WAS PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| | : | |
| KINGDOM VISION NETWORK, INC., | : | Case No. 04-25382-BKC-RBR |
| | : | |
| | : | |
| Debtor. | : | |
| _____ | : | |

### PLAN OF REORGANIZATION
### SUBMITTED BY KINGDOM VISION NETWORK, INC.,
### DEBTOR-IN-POSSESSION

Kingdom Vision Network, Inc., a debtor-in-possession before this Court pursuant to Chapter 11 of Title 11 of the United States Code hereby proposes the following plan of reorganization pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT, BOTH AS DEFINED BELOW, CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN UPON SECURED CREDITORS, UNSECURED CREDITORS, OR HOLDERS OF EQUITY INTERESTS ARE ATTRIBUTABLE EXCLUSIVELY TO THE PROPONENTS AND NOT TO ANY OTHER PARTY.

## ARTICLE I – INTRODUCTION

The Debtor, Kingdom Vision Network, Inc., was originally formed by the Reverend Dr. Mark Hanby, his son, and several other members of his ministry in or about 2001. Their goal was to create a family-friendly television channel providing alternatives to the mainstream programming offered by traditional broadcast and cable networks. The initial phases of the operation were successful in that the Debtor developed propriety programming and obtained oral commitments from advertisers to underwrite the network.

Unfortunately, KVN was much less successful in developing the next phases of its business. KVN began by distributing its programming through broadcast networks, then attempted to gain access to the public through cable networks, and finally attempted to distribute its programming through satellite dish networks. At each of these stages, it became increasingly clear that the Debtor's former management had not raised sufficient capital and did not have sufficient expertise to grow KVN's business successfully.

By late 2003, the Debtor no longer had sufficient capital to distribute its programming commercially and ceased operations. Shortly thereafter, a crisis consulting firm was retained by five of the largest creditors of Kingdom Vision to evaluate the company's options. The crisis managers immediately installed new interim management and eventually concluded that reorganization through bankruptcy was the best means of returning value to the Debtor's creditors and original investors. The Debtor voluntarily filed for

protection under Chapter 11 of the United States Bankruptcy Code on August 26, 2004.

The following plan of reorganization represents the result of interim management's attempt to create a vehicle to maximize the repayment of Kingdom Vision's creditors and investors. The plan seeks to achieve this goal through (1) a capital infusion from a third party, Wellington Capital Group, Inc., (2) the acquisition and merger of an employee payroll administration company into the reorganized debtor, (3) royalties generating from the licensing of Kingdom Vision's existing intellectual property, and (4) proceeds from litigation to be brought by Kingdom Vision against various entities. The specifics of these proposed transactions are set forth below, in the plan, and in the accompanying disclosure statement.

Kingdom Vision's new management believes that this plan represents the best route for maximizing creditor and investor recovery and urges you to support the plan.

## ARTICLE II - RULES OF CONSTRUCTION AND DEFINITIONS

1) <u>Rules of Construction.</u> For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture, or other

agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an exhibit is inconsistent with the terms of the exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to articles and exhibits are references to articles and exhibits of or to the Plan, as appropriate; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the exhibits referred to in the Plan shall be deemed incorporated herein by such reference and made a part hereof for all purposes; and (i) the rules of construction set forth in Section 102 of the Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision set forth herein.

2) _Definitions_. For the purposes of the Plan, as defined below, the following terms will have the meanings set forth in this article. Unless otherwise noted, all capitalized terms used in the Plan or the Disclosure Statement shall have the meanings set forth below:

1. **"Administrative Claim"** shall mean a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the chapter 11 cases to preserve the

estates of the Debtor or to operate the business of the Debtor. These costs and expenses include wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded pursuant to Sections 330(a) or 331 of the Code, as well as all fees and charges assessed against the Estates pursuant to Chapter 123 of Title 28, United States Code.

2. **"Allowed Claim"** shall mean a Claim (a) with respect to which a proof of Claim has been filed with the Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any Order of the Court; or (b) deemed filed pursuant to Section 1111(a) of the Code by virtue of such Claim having been scheduled in the list of creditors prepared and filed by the Debtor with the Court pursuant to Section 521(1) and Rule 1007(b) and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim pursuant to the provisions of the Plan or any Order of the Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Order of the Court, an Allowed Claim shall not include any Claim as to which an objection or proceeding challenging the allowance thereof has been interposed within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Court, until such objection or proceeding has been overruled, dismissed or settled by entry of a Final Order. Unless otherwise specified in the Plan or any Order of the Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim incurred or arising subsequent to the Petition Date.

3. **"Allowed Priority Tax Claim"** shall mean a Priority Tax Claim to the extent such Priority Tax Claim is an Unsecured Claim and is or becomes an Allowed Claim.

4. **"Allowed Secured Claim"** shall mean (a) a Secured Claim to the extent such Secured Claim is or becomes an Allowed Claim to the extent of the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of such Claim in the Debtor's interest in property securing such claim, or to the extent of the amount subject to a right of setoff held by the holder of such Secured Claim, as the case may be; or (b) any Claim that is deemed or adjudicated to be an Allowed Secured Claim pursuant to the provisions of the Plan, Section 1111(b) of the Code, or any Order of the Court.

5. **"Available Cash Flow"** shall mean the funds available to meet obligations under the Plan to holders of Allowed Class 4.1 Claims. The amount of Available Cash Flow in any Payment Period shall be determined by the Reorganized Company's Chief Financial Officer as provided for in the Plan and in conformity with Generally Accepted Accounting Principles. The amount of Available Cash Flow available in any Payment Period shall equal the gross revenues generated by the Reorganized Company less any royalties generated from the licensing of the Intellectual Property, any recoveries from any litigation, and payments made pursuant to the Plan on account of (1) Allowed Priority Tax Claims, (2) Allowed Administrative Claims, or (3) Allowed Class 3 Claims.

6. **"Bankruptcy Estate"** shall mean each estate created pursuant to Section 541 of the Code by the commencement of the Debtor's chapter 11 cases and shall include all property of the estate as defined in such Section.

7. **"Bar Date"** shall mean January 5, 2005, the date fixed by the Notice of Commencement of Case dated August 26, 2004, as the last date for the filing of Claims against the Debtor.

8. **"Board of Directors"** shall mean the three member board of directors of the Reorganized Company composed of the President, the Chief

Financial Officer, and the Creditor Board Member. The Board of Directors is described in greater detail in Article IX, below.

9. **"Business Day"** shall mean a day other than a Saturday or Sunday or any other day on which the majority of commercial banks located in Miami, Florida, are required or authorized to close.

10. **"Cash"** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits, or other similar items.

11. **"Claim"** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

12. **"Claims Administrator"** shall mean the Person selected pursuant to the provisions of the Plan to process and administer Claims and to oversee litigation undertaken for the benefit of the Bankruptcy Estate.

13. **"Class"** shall mean any Class into which Allowed Claims are classified pursuant the Plan.

14. **"Class 1 Claim", "Class 2 Claim", "Class 3 Claim", etc.** shall mean the specific Classes into which Allowed Claims are classified pursuant to Article III of the Plan.

15. **"Code"** shall mean the United States Bankruptcy Code, 11 U.S.C. §101, et seq., along with any applicable amendments thereof.

16. **"Confirmation Date"** shall mean the date of entry of the Confirmation Order by the Court.

17. **"Confirmation Order"** shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of the Code.

18. **"Convenience Claim"** shall mean any Unsecured Claim that is (a) five hundred dollars ($500) or less, or (b) more than five hundred dollars ($500) and is reduced to five hundred dollars ($500) by the holder thereof by means of a written election made on the ballot submitted by such holders in connection with confirmation of the Plan. Any unsecured creditor who elects to have a Convenience Claim thereby waives any right to further distribution to which the holder may also be entitled on account of an Unsecured Claim. Any holder of an Unsecured Claim who elects to have any such Claim treated as a Convenience Claim shall be deemed to have made such an election with respect to every Unsecured Claim held by such holder.

19. **"Court"** shall mean the United States Bankruptcy Court for the Southern District of Florida, Ft. Lauderdale Division, in which the Debtor's Chapter 11 case is pending, and any Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom.

20. **"Creditor"** shall have the same meaning as set forth in Section 101(10) of the Code.

21. **"Creditor Board Member"** shall mean a holder of an Allowed Class 4.1 Claim who serves as a member of the Board of Directors during the Plan Term. The selection criteria for Creditor Board Members are set forth in Article X of the Plan.

22. **"Debt"** shall have the same meaning as set forth in Section 101(12) of the Code.

23. **"Debtor"** shall mean Kingdom Vision Network, Inc. from that period commencing on the Petition Date and continuing through the Confirmation Date. The term "Debtor" may also be used in the Plan and the

Disclosure Statement to refer to Kingdom Vision Network, Inc. during the period prior to its filing for relief under Chapter 11 of the Code.

24. **"Disbursing Agent"** shall mean the President, or such agent or agents as the President may designate as the Disbursing Agent, who shall administer all Distributions and Payments pursuant to the Plan.

25. **"Disclosure Statement"** shall mean the Disclosure Statement approved for distribution by order of the Court dated _____, 2005, pursuant to Section 1125 of the Code.

26. **"Disputed Claim"** shall mean any Claim against the Debtor which is not an Allowed Claim and which has not been disallowed by a Final Order of the Court.

27. **"Disputed Claims Reserve"** shall have the meaning set forth in Article X of the Plan.

28. **"Distribution"** shall mean the Distribution to the holders of Allowed Claims against the Debtor pursuant to terms of the Plan.

29. **"Effective Date"** shall mean thirty (30) days after the Confirmation Date; provided, however, that in the event that an appeal of the Confirmation Order is timely filed and a stay of the Confirmation Order is imposed, the Effective Date shall be sixty (60) days after the termination or dissolution of the stay, or sixty (60) days after the Confirmation Order becomes a Final Order, whichever occurs first.

30. **"Estate"** shall have the same meaning as set forth in Section 541 of the Code.

31. **"Final Allowance Date"** shall mean the date on which the amount of a particular Claim has been finally allowed by the Court by a Final Order.

32. **"Final Order"** shall mean an Order or judgment of the Court which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending.

33. **"Fiscal Year"** shall mean the twelve month period from the first day of the month of January through the final day in the month of December of the same calendar year.

34. **"Impaired Class"** shall mean any Class the members of which are the holders of claims which are impaired within the meaning of Section 1124 of the Code.

35. **"Intellectual Property"** shall mean all intellectual property in which the Debtor had an ownership interest as of the Petition Date including, without limitation, recorded television programs.

36. **"Interest"** shall mean an outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, or other equity instruments in the Debtor.

37. **"Lien"** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor.

38. **"Merger Entity"** shall mean Sunshine Companies, Inc., a Florida corporation, which is not a bankruptcy debtor but which shall be acquired by the Debtor and merged with the Debtor pursuant to the terms of the Plan.

39. **"New Common Stock"** shall mean the common stock issued by the Reorganized Company pursuant to Article IX of the Plan.

40. **"Old Common Stock"** shall mean any share of Kingdom Vision Network, Inc.'s common stock which was issued prior to the Petition Date.

41. **"Order"** shall mean a determination, decree, adjudication, or judgment issued or entered by the Court.

42. **"Payment"** shall mean the Cash to be paid pursuant to the Plan to the holders of Allowed Claims.

43. **"Payment Dates"** shall mean the dates on which the President is obligated to make Payments to holders of Allowed Class 4.1 Claims pursuant to the Plan.

44. **"Payment Period"** shall mean any of the five consecutive twelve month periods commencing on the Effective Date. The final Payment Period shall terminate on the fifth anniversary of the Effective Date.

45. **"Performance Bonuses"** shall mean the aggregate of the President Performance Bonus, the CFO Performance Bonus, and the COO Performance Bonus for each Payment Period during the Plan Term. The three constituent types of bonuses are described in Article IX of the Plan

46. **"Person"** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

47. **"Petition Date"** shall mean August 26, 2004, the date on which the Debtor filed its voluntary petition for relief pursuant to Chapter 11 of the Code.

48. **"Plan"** shall mean this Chapter 11 plan of reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

49. **"Plan Term"** shall mean the five year period commencing on the Effective Date and terminating on the fifth anniversary of the Effective Date.

50. **"President"** shall mean the individual identified in Article IX of the Plan, together with such individual's successors, who shall be responsible for carrying out the duties specified in the Plan.

51. **"Prime Rate"** shall be the prime rate, i.e., the base rate of interest on corporate loans posted by at least seventy-five percent (75%) of the United States' thirty (30) largest banks, as published in the Wall Street Journal on the Confirmation Date.

52. **"Priority Claim"** shall mean a Claim other than an Administrative Claim or a Tax Claim to the extent such Claim is entitled to priority in payment pursuant to Section 507(a) of the Code.

53. **"Priority Tax Claim"** shall mean a Claim for taxes that is entitled to priority pursuant to Section 507(a)(7) of the Bankruptcy Code and is not a Secured Claim.

54. **"Pro Rata"** shall mean, with respect to any member of a Class of Claims or Interests, the same proportion that the amount of such member's Claim or Interest bears to the aggregate amount of all Claims or Interests of the Class.

55. **"Reorganized Company"** shall mean the Debtor and any successors thereto after the Effective Date of the Plan. After the Effective Date of the Plan, this term shall also encompass the Merger Entity which will be acquired by the Debtor through the operation of the Plan. On or before the effective date of the Plan and through operation of the Plan, the name of the Reorganized Company shall be changed to "KVN Services, Inc." and its state of incorporation shall be changed from Colorado to Florida.

56. **"Rule" or "Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the local bankruptcy rules as adopted by the Court.

57. **"Secured Claim"** shall mean a Claim secured by Lien(s) which are valid, perfected and enforceable under applicable law, and which are not subject to avoidance under the Code or other applicable non-bankruptcy laws.

58. **"Tax Claim"** shall mean a Claim for taxes that is not a Secured Claim and is a Claim entitled to priority pursuant to Section 507(a)(7) of the Bankruptcy Code.

59. **"Unimpaired Class"** shall mean any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of Section 1124 of the Code.

60. **"Unsecured Claim"** shall mean a claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim, an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Convenience Claim.

61. **"Wellington"** shall mean Wellington Capital Group, Inc., a corporation incorporated under the laws of the State of Nevada which shall contribute the Wellington Capital Contribution and the Wellington Equity Contribution to the Debtor as provided for herein.

62. **"Wellington Capital Contribution"** shall mean the amount of Cash contributed by Wellington to the Debtor on or before the Confirmation Date which amount shall be the greater of $100,000 or the amount necessary to pay (1) all Allowed Administrative Claims, (2) all Allowed Class 4.2 Claims, and (3) an additional $50,000 to the holders of Allowed Class 4.1 Claims.

63. **"Wellington Equity Contribution"** shall mean the stock in the Merger Entity which Wellington owns and shall contribute to the Debtor on or before the Confirmation Date. Wellington's contribution of such stock is described in greater detail in Article X of the Plan. The Wellington Equity Contribution shall be for the benefit of holders of Allowed Class 4.1 Claims and Allowed Class 7 Interests.

64. **"Wellington Letter of Intent"** shall mean that certain letter of intent executed by Wellington in favor of the Debtor and confirming

Wellington's intention to make the Wellington Capital Contribution and the Wellington Equity Contribution. A correct copy of the Wellington Letter of Intent is annexed to the Plan as Exhibit "A" and is incorporated herein by reference.

## ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated pursuant to Article III of the Plan are divided into the following Classes, which shall be mutually exclusive:

A. **Class 1 - Priority Wage, Vacation, and Benefit Claims.** Class 1 consists of all Allowed Claims entitled to priority treatment pursuant to Sections 507(a)(3) and 507(a)(4) of the Code.

B. **Class 2 – Secured Claims.**

**Class 2.1 – Motorola Secured Claim.** Class 2.1 consists of any Claim of Motorola, Inc. ("Motorola") arising from certain equipment lease documents, to the extent that such Claim is secured by a security interest in certain satellite up-link equipment (the "Motorola Equipment") owned by the Debtor.

C. **Class 3 - Secured Tax Claims.** All Allowed Claims for taxes, whether local, state or federal, that are secured by property of the Debtor but are not entitled to priority under the Code.

D. **Class 4 - Unsecured Creditors.**

1. **Class 4.1 – General Unsecured Claims.** Class 4.1 consists of all Unsecured Claims against the Debtor that are not otherwise classified in the Plan, including Claims of trade creditors, other than Administrative Claims and Priority Tax Claims.

2. **Class 4.2 - Convenience Class.** Class 4.2 consists of Unsecured Claims against the Debtor (other than Administrative or Priority Claims) in which either (1) the aggregate amount of all Allowed Claims held by a creditor

is less than or equal to five hundred dollars ($500.00) or (2) the creditor elects to reduce its Claim to five hundred dollars ($500.00) to receive the treatment afforded Convenience Class Claims pursuant to the Plan.

E.     **Class 5 - Non-Compensatory Claims.**  Class 5 consists of all Claims, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, or forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim.

F.     **Class 6 - Shareholder Interests.**  Class 6 consists of all holders of stock in Kingdom Vision, Inc. or any of its corporate subsidiaries which was issued prior to the Petition Date.

**ARTICLE IV – TREATMENT OF
ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS**

A.     **Administrative Claims.**

    1.     Non-Ordinary Course Administrative Claims.

        a.     Any person or entity, including professionals who have rendered services to the Debtor during the course of the Debtor's bankruptcy case, that asserts an Administrative Claim arising before the Effective Date, including claims pursuant to Section 503(b) of the Code but excluding ordinary course claims as defined and discussed below, shall, on or before such date as the Court may establish in the Confirmation Order or otherwise, file an application, motion, or request, as called for by the Rules, with the Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim.   However, applicants or movants who filed applications, motions, or requests with the Court before the Confirmation Date need not file a new application, motion, or request.  Failure to file a timely

application, motion, or request for allowance pursuant to this Section shall bar a claimant from seeking recovery on such Claim.

b. Each holder of an administrative Claim which is not an "Ordinary Course Administrative Claim," as defined and discussed below shall be paid one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Court or as otherwise agreed by the Debtor and the Claimant, on or before the Effective Date.

2. <u>Ordinary Course Administrative Claims</u>. Administrative expenses arising from obligations of the Debtor or the Merger Entity incurred in the ordinary course of business shall be resolved through the performance of the respective obligations by the Reorganized Company in accordance with the terms and conditions of the agreement, or applicable law, giving rise thereto, and the confirmed Plan. Applicants need not file proofs of claim to protect their rights with respect to administrative expenses arising from obligations of the Debtor or the Merger Entity incurred in the ordinary course of their respective businesses.

B. **Priority Tax Claims.** Except to the extent that the holder has agreed or may agree to a different treatment, each holder of an Allowed Priority Tax Claim shall receive from the Reorganized Company, in full satisfaction of such Claim, cash equal to the amount of such claim, plus simple interest at such a rate of interest as may be required pursuant to Section 1129(a)(9)(C) of the Code. The precise rate of interest to be paid shall equal the Prime Rate and shall be payable from the Petition Date. Such Claims shall be payable in equal annual installments beginning on the first Payment Date after the Order allowing such Claims becomes a Final Order and ending on the last Payment Date that occurs before the sixth anniversary of the date of the assessment of such tax.

## ARTICLE V - TREATMENT OF UNIMPAIRED CLASSES

The following Classes of Claims are not impaired, as that term is defined in §1124 of the Code, under the Plan and shall be treated as set forth below.

A.    **Class 1 - Priority Wage, Vacation, and Benefit Claims.**

Priority Wage, Vacation, and Benefit Claims shall be resolved through the payment of 100% of all Allowed Class 1 Claims in Cash on or before the Effective Date.  The Debtor does not anticipate having any holders of Allowed Class 1 Claims.

B.    **Class 2.1 - Motorola Secured Claim.**

The collateral for the Motorola Secured Claim is certain communications equipment which the Reorganized Company will not require for its ongoing business after the Confirmation Date.  Accordingly, title to all of the Debtor's equipment in which Motorola has a properly perfected security interest shall be transferred to Motorola on or before the Effective Date as full satisfaction for Motorola's Class 2.1 Claim.  This transfer shall occur by operation of the Plan and shall not require further documentation or order of the Court.   The Motorola Equipment fully secures the Motorola Secured Claim and the transfer of the Motorola Equipment to Motorola constitutes the indubitable equivalent of such Claim pursuant to § 1111(b) of the Code.

C.    **Class 4.2 - Convenience Class Claims.**   Each holder of an Allowed Convenience Class Claim, shall receive a payment in Cash equal to one hundred percent (100%) of its Allowed Convenience Class Claim within thirty (30) days of the Effective Date.

## ARTICLE VI - TREATMENT OF IMPAIRED CLASSES

A.    **Generally.**  The following Classes are impaired, as that term is defined in § 1124 of the Code, under the Plan.  In the event a controversy arises as to

whether any class of Claims is impaired under the Plan, the Court shall, after notice and an opportunity for a hearing, resolve such controversy. **All Impaired Classes shall receive the Distributions set forth in this Article on account of and in complete satisfaction of all Claims against the Debtor, and shall have no rights or remedies against the Debtor, the Merger Entity, or the Reorganized Company or against any of their assets or properties, except as specifically set forth in this Plan and any documents executed to effectuate the Plan which are consistent with the Plan.**

B.    **Determination of Allowed Amounts.**  The treatment prescribed for Claims in this Article VI shall in all events refer exclusively to the Allowed Amount of each respective Claim.  In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of the Allowed Amount of such Claim by agreement or through the entry of a Final Order.  Notwithstanding Confirmation of the Plan, the Claims Administrator shall have the right to object to any Claim for any reason authorized by applicable bankruptcy and non-bankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

C.    **Class 3 - Secured Tax Claims.**

The Debtor does not anticipate the existence of any secured tax claims in this case.  To the extent that any such Allowed Claims are found to exist, then each Holder of such an Allowed Secured Tax Claim shall be paid 100% of the amount of its Allowed Claim in Cash over a period of six (6) years with such period commencing on the Effective Date of the Plan.  The Allowed Claim of such a Holder shall equal the indebtedness owed to such a holder as of the