**From:** Hans Christian Beyer [hbeyer@wans.net]
**Sent:** Tuesday, June 27, 2006 4:36 PM
**To:** Shane Williams; Jay Stollenwerk
**Cc:** Phil Kaprow
**Subject:** Presidion Letter (revised)
**Attachments:** 06-06-27.MN.Presidion.L FA to J Berkowitz.doc; 06-06-27.MN.Presidion.L FA to J Berkowitz.clean.doc

entlemen:
ttached please find a clean and a black-lined copy of the revised Presidion letter.
est,

+++++++++++++++++++++++++++++++++++++++++++
ans Christian Beyer
exia Strategy Corporation
irabilis Ventures, Inc.
1 N. Orange Avenue, 20th Floor
lando, Florida 32801
lephone: (813) 245-9300
nail: hbeyer@wans.net

e information contained in this e-mail message and any
chments is confidential and may be privileged. If you
t the intended recipient of this e-mail message, please
all copies of this message and any attachments, destroy
hard copies of this message and any attachments, and
ise the sender of your receipt of this message by return
ail. Thank you.

**EXHIBIT "G"**

[AQMI STRATEGY CORPORATION LETTERHEAD]

June 27, 2006

Ms. Judy Berkowitz
Internal Revenue Service
7850 SW 6th Court
Plantation, FL   33324

    Re:    Offer of compromise for taxpayers Sunshine Staff Leasing, Inc. ("SSL"); Sunshine Companies III, Inc. ("S III"); and Presidion Solutions VII, Inc. (f/k/a Professional Benefit Solutions, Inc. and, collectively with SSL and S III, the "Taxpayer")

Dear Ms. Berkowitz:

Thank you for all of your time and assistance over the last several months in the connection with quantifying and, hopefully, resolving the obligations of the Taxpayer to the Internal Revenue Service (the "IRS"). This letter is intended formalize the offer to the IRS in connection with those liabilities which you have previously discussed with Dan Myers of our office.

Our offer to finally resolve the Taxpayer's obligations to the IRS is as follows: AQMI Strategy Corporation (AQMI), as the primary business consultant to the Taxpayer, will establish an irrevocable trust, the primary purpose of which will be to hold all of the assets of the Taxpayer while its book of business is being prepared for sale to third party purchasers (the "Trust"). The secondary purpose of the Trust will be to protect the assets by ensuring that they are insured and protected against any loss.

As Mr. Myers has previously informed you, the primary purchaser of the Taxpayer's book of business will be Gevity HR, Inc. ("Gevity"). Secondary purchasers will be identified to the IRS as they are identified and will be entities seeking to acquire those parts of the Taxpayer's book of business which Gevity is unable or unwilling to acquire.

Pursuant to our offer, the operating profits from that portion of the Taxpayer's existing book of business which is not sold will be paid to the IRS in monthly installments of Six Hundred Thousand Dollars ($600,000) per month indefinitely until either (a) the tax arrearage is paid or (b) such assets have been sold and the proceeds used to reduce or eliminate the Taxpayer's liabilities to the IRS. We anticipate that one to five years will be required to complete (1) the sale of the Taxpayer's book of business and (2) the subsequent liquidation of the non-monetary consideration (presumably stock) received as consideration for the book of business. As proceeds are generated from this liquidation process, they will be paid to the IRS to reduce the Taxpayer's outstanding tax liability.

To prepare for the sale transactions underlying this offer, the Taxpayer has terminated the unprofitable contracts of the Taxpayer and eliminated the unnecessary overhead which

has historically drained the assets of the Debtor. In this regard, we have arranged for the Taxpayer's outstanding liabilities to professionals and holders of certain secured promissory notes to be paid in full or paid over time. As part of this offer, the Taxpayer will warrant that proper insurance of its assets is maintained and that an indemnitor (Frank Amodeo, individually, together with an unrelated corporation, as required by the insurance carriers) will guarantee the Taxpayer's workers compensation tail. The net result of this offer is that the IRS will be able to collect the settlement funds from the Trust without having to incur the expense or delay associated with taking property subject to other claims and senior security interests.

Please note that any subsequent liquidation of Gevity stock received as part of the non-monetary consideration from the sale of the Taxpayer's book of business will be subject to ongoing negotiation with Gevity on the restrictions pertaining to the sale of such stock. Gevity will preclude "dumping" of the stock in order to protect its shareholders from a deflated market value. It is anticipated that the sale of such stock may be restricted from one to five years. The result of the negotiation on such restrictions will directly impact the timeframe in which the IRS will be repaid, however, we are confident that a resolution or this issue is imminent which will allow not require such stock to be held for more than a five year period.

To address your previous question regarding Craig Vandenburg, effective Friday, June 30, 2006, Mr. Vandenburg will have no corporate authority, no decision making authority for the Taxpayer, and no operational involvement with the Taxpayer (other than as described below). This is being accomplished through the sale to AEM, Inc. (AEM) on July 1, 2006, of the Taxpayer's book of business (in preparation for its partial sale to Gevity). Recognizing that Mr. Vandenburg has a vested interest in seeing this offer both accepted and fulfilled, Mr. Vandenburg has agreed to be employed as an independent sales representative for AEM to maximize the value of that book of business.

In anticipation of the IRS's possible concerns, AEM has agreed as a material portion of its agreement to purchase that book of business to provide daily reports of payroll taxes to the IRS. AEM's purpose in taking over control of the book of business is to prepare it for sale to a third party. Without properly preparing the books of business, including the synthesis of processing compatibility with the Buyer, the value of the book could substantially decrease.

In summary, we anticipate that the transfer of the Taxpayer's book of business will commence in July, 2006. Our belief is that it could take up to six months to complete the transfer. All proceeds from the sale of this book of business, whether monetary or otherwise, will be transferred into the Trust (and thus subject to the terms set forth herein) to satisfy the Taxpayer's obligations to the IRS.

I remain confident that we are close to a mutually agreeable resolution of the Taxpayer's obligations to the IRS and look forward to resolving these matters with you in the near future. Please do not hesitate to contact me should you have any questions pertaining to this offer or any of the other information set forth in this letter.

**AQMI STRATEGY CORPORATION,**

By:________________________________
Frank Amodeo, President

P.S. Please note that we have identified certain third party liabilities owed to the Taxpayer and its affiliates. Initially we believed there would be value in engaging in the collection of these liabilities; however, subsequent analysis suggests that these attempts to collect would create an appearance of vulnerability which would subject the valuable assets (e.g. the Taxpayer's book of business) to "raids" by competition and would tip the balance of power in negotiations with prospective purchasers in their favor, thus resulting in a reduced value for both the Taxpayer and the Service. We are prepared to disclose to the IRS all such liabilities we have discovered and will prudently prosecute collection of certain of those claims. All creditors, investors, and the Service have been or should be paid in full or on terms to which they have agreed; additionally, we anticipate earning a significant return on our investments of time and effort. Thus pursuit, especially early pursuit, of certain of these claims would be self-defeating and would undermine the timeline, if not the entire viability, of the strategy underlying this offer.

[illegible]

June 27, 2006

Ms. Judy Berkowitz
Internal Revenue Service
7850 SW 6th Court
Plantation FL 33324

Re: Offer of compromise for taxpayers Sunshine Staff Leasing, Inc. ("SSL"), Sunshine Companies III, Inc. ("SIII"), and Presidion Solutions VII, Inc. (f/k/a Professional Benefit Solutions, Inc. (and, collectively with SSL and SIII, the "Taxpayer")

Dear Ms. Berkowitz:

Thank you for all of your time and assistance over the last several months in the connection with quantifying and, hopefully, resolving the obligations of the Taxpayer to the Internal Revenue Service (the "IRS"). This letter is intended formalize the offer to the IRS in connection with those liabilities which you have previously discussed with Dan Myers of our office.

Our offer to finally resolve the Taxpayer's obligations to the IRS is as follows: AQMI Strategy Corporation (AQMI), as the primary business consultant to the Taxpayer, will establish an irrevocable trust, the primary purpose of which will be to hold all of the assets of the Taxpayer while its book of business is being prepared for sale to third party purchasers (the "Trust"). The secondary purpose of the Trust will be to protect the assets by ensuring that they are insured and protected against any loss.

As Mr. Myers has previously informed you, the primary purchaser of the Taxpayer's book of business will be Gevity HR, Inc. ("Gevity"). Secondary purchasers will be identified to the IRS as they are identified and will be entities seeking to acquire those parts of the Taxpayer's book of business which Gevity is unable or unwilling to acquire.

Pursuant to our offer, the operating profits from that portion of the Taxpayer's existing book of business which is not sold will be paid to the IRS in monthly installments of Six Hundred Thousand Dollars ($600,000) per month indefinitely until either (a) the tax arrearage is paid or (b) such assets have been sold and the proceeds used to reduce or eliminate the Taxpayer's liabilities to the IRS. We anticipate that one to five years will be required to complete (1) the sale of the Taxpayer's book of business and (2) the subsequent liquidation of the non-monetary consideration (presumably stock) received as consideration for the book of business. As proceeds are generated from this liquidation process, they will be paid to the IRS to reduce the Taxpayer's outstanding tax liability.

To prepare for the sale transactions underlying this offer, the Taxpayer has terminated the unprofitable contracts of the Taxpayer and eliminated the unnecessary overhead which

**Formatted**
**Formatted:** Centered
**Formatted:** Superscript
**Formatted:** Justified, Indent: Left: 0.5", Hanging: 0.5", Tabs: 0.5", Left + 1", Left + 1.5", Left + 2", Left + 3", Centered
**Deleted:**
**Deleted:** to set forth our
**Deleted:**
**Deleted:** Internal Revenue Service (Service)
**Deleted:** and to confirm the contents of several conversations between yourself and
**Deleted:** ,
**Deleted:** . The official
**Deleted:** the
**Deleted:** t
**Deleted:** is
**Deleted:** maintained
**Deleted:**
**Deleted:** you are aware
**Deleted:** is
**Deleted:** become known
**Deleted:** .
**Deleted:** those
**Deleted:** , including those customers requiring higher workers compens ... [1]
**Deleted:** . T
**Deleted:** not disposed of
**Deleted:** Service
**Deleted:** in
**Deleted:** . The Taxpayer believ ... [2]
**Deleted:** Five
**Deleted:** 5
**Deleted:** the
**Deleted:** This 1 to 5 year period ... [3]
**Deleted:** in order
**Deleted:** Additionally, a
**Deleted:** the
**Deleted:** occurs, proceeds
**Deleted:** Service
**Deleted:** In efforts t
**Deleted:** the viability of

has historically drained the assets of the Debtor. In this regard, we have arranged for the Taxpayer's outstanding liabilities to professionals and holders of certain secured promissory notes to be paid in full or paid over time. As part of this offer, the Taxpayer will warrant that proper insurance of its assets is maintained and that an indemnitor (Frank Amodeo, individually together with an unrelated corporation, as required by the insurance carriers) will guarantee the Taxpayer's workers compensation tail. The net result of this offer is that the IRS will be able to collect the settlement funds from the Trust without having to incur the expense or delay associated with taking property subject to other claims and senior security interests.

Please note that any subsequent liquidation of Gevity stock received as part of the non-monetary consideration from the sale of the Taxpayer's book of business will be subject to ongoing negotiation with Gevity on the restrictions pertaining to the sale of such stock. Gevity will preclude "dumping" of the stock in order to protect its shareholders from a deflated market value. It is anticipated that the sale of such stock may be restricted from one to five years. The result of the negotiation on such restrictions will directly impact the timeframe in which the IRS will be repaid, however, we are confident that a resolution of this issue is imminent which will allow not require such stock to be held for more than a five year period.

To address your previous question regarding Craig Vandenburg, effective Friday, June 30, 2006, Mr. Vandenburg will have no corporate authority, no decision making authority for the Taxpayer, and no operational involvement with the Taxpayer (other than as described below). This is being accomplished through the sale to AEM, Inc. (AEM) on July 1, 2006, of the Taxpayer's book of business (in preparation for its partial sale to Gevity). Recognizing that Mr. Vandenburg has a vested interest in seeing this offer both accepted and fulfilled, Mr. Vandenburg has agreed to be employed as an independent sales representative for AEM to maximize the value of that book of business.

In anticipation of the IRS's possible concerns, AEM has agreed as a material portion of its agreement to purchase that book of business to provide daily reports of payroll taxes to the IRS. AEM's purpose in taking over control of the book of business is to prepare it for sale to a third party. Without properly preparing the books of business, including the synthesis of processing compatibility with the Buyer, the value of the book could substantially decrease.

In summary, we anticipate that the transfer of the Taxpayer's book of business will commence in July, 2006. Our belief is that it could take up to six months to complete the transfer. All proceeds from the sale of this book of business, whether monetary or otherwise, will be transferred into the Trust (and thus subject to the terms set forth herein) to satisfy the Taxpayer's obligations to the IRS.

I remain confident that we are close to a mutually agreeable resolution of the Taxpayer's obligations to the IRS and look forward to resolving these matters with you in the near future. Please do not hesitate to contact me should you have any questions pertaining to this offer or any of the other information set forth in this letter.

[**Deleted:** draining ..., not the least of which was the cost of ... seller ... which have been, along with other secured creditors, ... extended in ... Additionally, the Taxpayer's strategy includes the assurance that ... is in place for six months and ... and willing to cover back end downward effect related to the Service ... t... being unduly burden [... [4]]

[**Deleted:** Specifically..., ... is private ... against the Taxpayer's being able to sell the stock acquired as consideration for the sale of the book of business. ... The range in discussion for the restriction is anywhere from 1 to 5 years. ... this ... on ... Service ... can get us ... to remain within the ... 5 [... [5]]

[**Deleted:**]

[**Deleted:** or ... of full operational and managerial control of the book of business for processing and preparation for sale... matter successful, ... sign up in order to keep securing new busi [... [6]]

[**Formatted:** Indent: First line: 0"]

[**Deleted:** Service's ... ... you ... directly until you are comfortable with AEM's performance, ... management and operations is to prepare the [... [7]]

[**Deleted:** the Taxpayer expects that the transfers will begin to commence ... 6 in order ... make ... smooth... Monetary proceeds will be placed in a trust and paid to the Service in accordance with our agreement. [... [8]]

[**Deleted:** , ... continuing to work with you towards the same [... [9]]

AQMI STRATEGY CORPORATION,

Deleted: a Florida corporation¶

By:______________________________
Frank Amodeo, President

P.S. Please note that we have identified certain third party liabilities owed to the Taxpayer and its affiliates. Initially we believed there would be value in engaging in the collection of these liabilities, however, subsequent analysis suggests that these attempts to collect would create an appearance of vulnerability which would subject the valuable assets (e.g. the Taxpayer's book of business) to "raids" by competition and would tip the balance of power in negotiations with prospective purchasers in their favor, thus resulting in a reduced value for both the Taxpayer and the Service. We are prepared to disclose to the IRS all such liabilities we have discovered and will prudently prosecute collection of certain of those claims. All creditors, investors, and the Service have been or should be paid in full or on terms to which they have agreed; additionally, we anticipate earning a significant return on our investments of time and effort. Thus pursuit, especially early pursuit, of certain of these claims would be self-defeating and would undermine the timeline, if not the entire viability, of the strategy underlying this offer.

Formatted: Indent: First line: 0"
Deleted: We wish to articulate:
Deleted: a
Deleted: to
Deleted: engage
Deleted: ,
Deleted: indicated
Deleted: contracts
Deleted: Taxpayer's creditor (the
Deleted: )
Deleted: ¶ . On balance however, w
Deleted: identify
Deleted: of the
Deleted: which we are aware of,
Deleted: , and we
Deleted: for our efforts
Deleted: ,
Deleted: to pay the creditors and the Service

**Page 1: [1] Deleted** **Hans Christian Beyer** **6/27/2006 3:45:00 PM**

, including those customers requiring higher workers compensation codes, especially construction.

**Page 1: [2] Deleted** **Hans Christian Beyer** **6/27/2006 3:46:00 PM**

. The Taxpayer believes that the payments could be leveled off at a base payment

**Page 1: [3] Deleted** **Hans Christian Beyer** **6/27/2006 3:47:00 PM**

This 1 to 5 year period is the time expected to

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 3:52:00 PM**

draining

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 3:53:00 PM**

, not the least of which was the cost of

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 3:53:00 PM**

seller

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 3:54:00 PM**

which have been, along with other secured creditors,

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 3:54:00 PM**

extended in

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 3:55:00 PM**

Additionally, the Taxpayer's strategy includes the assurance that

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 3:55:00 PM**

is in place for six months and

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 3:55:00 PM**

and

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 3:56:00 PM**

willing to cover

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 3:56:00 PM**

back end downward effect related to the

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 3:56:00 PM**

Service

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 4:05:00 PM**

t

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 4:05:00 PM**

being unduly burdened by

**Page 2: [4] Deleted** **Hans Christian Beyer** **6/27/2006 4:06:00 PM**

debts

**Page 2: [5] Deleted** **Hans Christian Beyer** **6/27/2006 3:29:00 PM**

Specifically

**Page 2: [5] Deleted** **Hans Christian Beyer** **6/27/2006 4:07:00 PM**

,

**Page 2: [5] Deleted** **Hans Christian Beyer** **6/27/2006 4:06:00 PM**

is

**Page 2: [5] Deleted** **Hans Christian Beyer** **6/27/2006 4:07:00 PM**

private

Page 2: [5] Deleted Hans Christian Beyer 6/27/2006 4:08:00 PM

against the Taxpayer's being able to sell the stock acquired as consideration for the sale of the book of business.

Page 2: [5] Deleted Hans Christian Beyer 6/27/2006 4:08:00 PM

The range in discussion for the restriction is anywhere from 1 to 5 years.

Page 2: [5] Deleted Hans Christian Beyer 6/27/2006 4:08:00 PM

this

Page 2: [5] Deleted Hans Christian Beyer 6/27/2006 4:09:00 PM

on

Page 2: [5] Deleted Hans Christian Beyer 6/27/2006 4:09:00 PM

Service

Page 2: [5] Deleted Hans Christian Beyer 6/27/2006 4:09:00 PM

can get

Page 2: [5] Deleted Hans Christian Beyer 6/27/2006 4:09:00 PM

us

Page 2: [5] Deleted Hans Christian Beyer 6/27/2006 4:09:00 PM

to remain within the

Page 2: [5] Deleted Hans Christian Beyer 6/27/2006 4:09:00 PM

5

Page 2: [6] Deleted Hans Christian Beyer 6/27/2006 4:10:00 PM

or

Page 2: [6] Deleted Hans Christian Beyer 6/27/2006 4:10:00 PM

of full operational and managerial control of the book of business for processing and preparation for sale.

Page 2: [6] Deleted Hans Christian Beyer 6/27/2006 4:11:00 PM

matter successful,

Page 2: [6] Deleted Hans Christian Beyer 6/27/2006 4:11:00 PM

sign up

Page 2: [6] Deleted Hans Christian Beyer 6/27/2006 4:16:00 PM

in order to keep securing new business.

Page 2: [7] Deleted Hans Christian Beyer 6/27/2006 4:16:00 PM

Service's

Page 2: [7] Deleted Hans Christian Beyer 6/27/2006 4:17:00 PM

,

Page 2: [7] Deleted Hans Christian Beyer 6/27/2006 4:17:00 PM

you

Page 2: [7] Deleted Hans Christian Beyer 6/27/2006 4:17:00 PM

directly until you are comfortable with AEM's performance.

Page 2: [7] Deleted Hans Christian Beyer 6/27/2006 4:17:00 PM

management and operations is to prepare the

Page 2: [8] Deleted Hans Christian Beyer 6/27/2006 4:19:00 PM

the Taxpayer expects that the transfers will begin to commence

**Page 2: [8] Deleted** **Hans Christian Beyer** **6/27/2006 4:19:00 PM**

6

**Page 2: [8] Deleted** **Hans Christian Beyer** **6/27/2006 4:19:00 PM**

in order

**Page 2: [8] Deleted** **Hans Christian Beyer** **6/27/2006 4:19:00 PM**

make

**Page 2: [8] Deleted** **Hans Christian Beyer** **6/27/2006 4:19:00 PM**

smooth

**Page 2: [8] Deleted** **Hans Christian Beyer** **6/27/2006 4:20:00 PM**

Monetary proceeds will be placed in a trust and paid to the Service in accordance with our agreement.

**Page 2: [9] Deleted** **Hans Christian Beyer** **6/27/2006 4:21:00 PM**

,

**Page 2: [9] Deleted** **Hans Christian Beyer** **6/27/2006 4:22:00 PM**

continuing to work with you towards the same.